# CONTRATO DE MARINERO
# CARNIVAL CRUISE LINES

Habiendo presentado la solicitud de empleo el Marinero cuyo nombre aparece a continuación a Carnival Corporation, cuyo nombre comercial es Carnival Cruise Lines ("CCL"), y habiendo considerado CCL dicha solicitud, se celebra el presente Contrato de Marinero entre CCL y el Marinero, en conformidad con los términos y condiciones que a continuación aparecen. Cualesquiera otros convenios, acuerdos o entendimientos referentes a los términos de contratación laboral quedan por el presente anulados y sustituidos, y ninguna enmienda ni excepción a esta disposición se considerará válida. El Marinero no se basará en ninguna declaración ni promesa, ya sean verbales o por escrito, que contradigan el Contrato de Marinero en lo que concierna a salarios, propinas y demás términos y condiciones del servicio. Tampoco el Marinero se basará en promesa alguna, ya sea verbal o por escrito, que contradiga el acuerdo de que la contratación laboral del Marinero
es a voluntad de las partes.

1. El Marinero **LINDEL ARVIN NELSON WATSON, CREW # 226046**
acepta trabajar en el puesto de **STATEROOM STEWARD**
a bordo de cualquier buque que se le asigne operado por CCL o por cualquiera de sus compañías afiliadas, independientemente de la clase u ubicación del buque asignado. CCL se reserva el derecho de cambiar el puesto asignado al Marinero en cualquier momento y sin previo aviso. Una vez que el Marinero ha sido asignado a un buque, permanecerá asignado únicamente a ese buque, a menos que y hasta que sea reasignado a otro buque, a la discreción exclusiva de CCL. CCL se reserva el derecho de cambiar el buque asignado al Marinero en cualquier momento y sin previo aviso.

2. El presente Contrato de Marinero entrará en vigor cuando el Marinero se presente a trabajar en un buque asignado en proceso de navegación. Las partes acuerdan que las relaciones de contratación entre ellos se regirán por los términos del presente Contrato comenzando inmediatamente en la fecha en que el Marinero se inscriba a bordo del buque asignado después de firmar el presente Contrato y continuando por un período de tiempo que no excederá de un período máximo de servicio de 10 meses. El presente Contrato terminará de forma automática sin previo aviso inmediatamente después de que el Marinero se desembarque de forma no programada del buque asignado si el Marinero desembarca del mismo por razón alguna, que incluye licencia personal no programada, enfermedad o lesión por más de 24 horas continuas, pero sin limitarse a éstas. El presente Contrato también terminará sin previo aviso inmediatamente después que el Marinero no se encuentre apto o capaz de servir en el puesto establecido al comenzar un nuevo viaje. Si el Marinero permanece en el buque asignado después del comenzar un nuevo viaje, lo hará como huésped y no se le consideraría más ser miembro de la tripulación del buque. No se le restablecerá al Marinero su condición como miembro de la tripulación sino hasta que el Marinero de hecho vuelva a servir en su puesto designado. Además, el presente Contrato estará suspendido por todo período que el buque asignado no esté en proceso de navegación, lo cual incluye tiempo en diques secos, tiempo fuera de servicio para fines de reparación o mantenimiento, o si el buque aún no ha sido puesto en servicio. No obstante cualquier otra disposición que contenga el Contrato de Marinero, éste se podrá terminar de inmediato a voluntad tanto de CCL como del Marinero al entregar una notificación verbal o escrita de terminación o renuncia.

3. A. El derecho del Marinero a recibir salario alguno está condicionado a que de hecho firme y se inscriba como miembro de la tripulación del buque asignado en el puesto designado mientras el buque esté en proceso de navegación.

3. B. Al Marinero se le pagará un salario de $ 1.6071 dólares por cada día de trabajo, incluyendo horas extraordinarias. Esta tasa diaria equivale a un salario mensual de $ 48.7500 dólares. Una semana de trabajo consiste en 42 horas básicas y 28 horas extraordinarias, independientemente de que las horas extraordinarias (overtime) se trabajen o no, lo cual resulta en una semana laboral compuesta de un total de 70 horas. El Marinero tambien recibira pago por vacaciones a una tasa de un día por cada once días trabajados.

3. C. Este subapartado 3(C) no aplicará a ningún Marinero que pueda recibir propinas o gratificaciones de parte de pasajeros o de otros Marineros. Este subapartado 3(C) tampoco aplicará a ningún Marinero que trabaje en gerencia o en

Rev. 23/mayo/05 - Arbitraje





Iniciales


capacidad de Jefe de Departamento. Sujeto a estas excepciones, las horas extraordinarias adicionales (extra overtime) se componen de las horas que se trabajen en exceso de 70 horas por semana de acuerdo con los expedientes llevados por CCL. Al Marinero se le pagarán $ N/A dólares por hora extraordinaria adicional trabajada, pero se entiende y acuerda que el Marinero no tiene derecho ni le corresponde trabajar ni a ser asignado a trabajar horas extraordinarias adicionales (extra overtime), las cuales se asignan a discreción de CCL "según sea necesario". En caso de que el Marinero crea que ha trabajado más horas que las documentadas en los expedientes de horas del Marinero o de CCL, o que se le deba algún salario devengado, el Marinero tiene que notificarlo por escrito a su supervisor y a su jefe de departamento antes de que termine el viaje en el cual se trabajaron las horas adicionales. Adicionalmente, el Marinero tiene que cumplir con los procedimientos de resolución de conflictos de salario que contiene el Documento de Reconocimiento y Verificación del Formulario de Pago del Salario el cual el Marinero debe llenar antes de haber terminado el viaje en cuestión.

3. D. CCL no hace promesa, garantía ni compromiso, y el Marinero acepta que no espera ni anticipa que CCL le pague gratificación ni propina alguna como remuneración bajo ninguna circunstancia. En caso de que un Marinero que pueda percibir propinas a causa de su puesto, trabaje en virtud el presente Contrato durante un período en cual el barco esté fuera de servicio regular por cualquier razón, tal como en dique seco, durante un trayecto transoceánico o participando en funciones inaugurales, o que el Marinero esté trabajando pero no a bordo del barco, se le pagará a la tasa de $ 35.00 dólares por cada día de trabajo. En caso de que se pague el salario enunciado en este subapartado, todas las disposiciones del anterior subapartado 3.B, con la excepción de las contenidas en la primera oración, seguirán aplicando con plena fuerza y vigor.

3. E. Si el Marinero se enferma, lesiona, no está apto o no puede trabajar durante un viaje, su derecho a salarios no devengados se extenderá solamente hasta el final del viaje en el cual el Marinero finaliza su servicio. En caso de que el Marinero esté fuera de servicio debido a enfermedad o lesiones, CCL se reserva el derecho de brindarle tratamiento médico a bordo de su buque o en tierra, ya sea en el puerto base del buque, un puerto regular de escala o en la nación donde viva el Marinero, a la discreción exclusiva de CCL, no obstante la terminación automática del presente Contrato en tales circunstancias.

3. F. En caso de que el Marinero regrese a trabajar después de que el presente Contrato haya terminado automáticamente en conformidad con el párrafo 2, entonces se considerará que el regreso del Marinero a la labor activa señalará el comienzo de un nuevo Contrato de Marinero por separado conforme a los mismos términos y condiciones que contenga el presente Contrato, y dichos términos tendrán fuerza y vigor hasta el momento en que se celebre un nuevo Contrato de Marinero.

3. G. Si la asignación de trabajo programado al Marinero cae durante un período de dique flotante o dique seco, el Marinero puede ser puesto fuera de servicio del buque asignado antes de dicho período de dique flotante o dique seco, y de ser así, no estará contratado ni empleado por CCL durante dichos períodos. Si el Marinero permanece en el buque durante dichos períodos, lo hace como un huésped de negocios hasta que el buque vuelva a navegar.

4. El Marinero reconoce que como tal se le exige en todo momento obedecer y cumplir con las reglas y reglamentos del buque asignado, del Folleto para el Equipo Carnival (Team Carnival Handbook), así como todas las demás reglas, reglamentos y normas verbales y escritos de CCL y/o del operador del buque asignado y/o del mando del buque asignado. Toda infracción de cualquiera de tales reglas, políticas, procedimientos y/o normas puede resultar en una acción disciplinaria, incluyendo hasta la terminación automática del contrato laboral. El presente Contrato de ninguna manera disminuye ni modifica los deberes que el Marinero tiene independientemente como tal de cumplir con todas las dichas reglas, reglamentos, políticas, procedimientos y/o normas.

5. El presente Contrato de Marinero constituye el único y exclusivo contrato laboral entre las partes. No existen previos ni presentes acuerdos, declaraciones ni entendimientos, verbales ni por escrito, que obliguen a las partes, a no ser que las contenga expresamente el presente Contrato de Marinero. Ninguna modificación ni cambio del presente Contrato de Marinero será válido ni obligará a las partes a menos que esté por escrito y firmado por la parte o las partes interesadas en quedar obligadas por el mismo.

6. Relación Legal Comercial. El Marinero y la Línea de Crucero reconocen y aceptan que la contratación laboral del Marinero con CCL constituye una relación legal comercial entre las partes.

Rev. 23/mayo/05 - Arbitraje, Iniciales _____

7. Arbitraje. Todos los conflictos que surjan a raíz del presente Contrato o en conexión con el mismo, incluyendo todo

aspecto relativo a su existencia, validez o terminación, o el servicio del Marinero en el buque, será referido a arbitraje y finalmente resuelto a través del mismo, conforme a las Reglas de Arbitraje de la International Chamber cf Commerce, cuyas Reglas se consideran incorporadas por referencia a esta cláusula. El número de árbitros será uno. El lugar del arbitraje será Londres en Inglaterra, Mónaco, la Ciudad de Panamá en Panamá, y Manila en Filipinas, de las cuales la que esté más cerca del país donde viva el Marinero. El Marinero y la Línea de Crucero deben arbitrar en la jurisdicción designada, con exclusión de todas las demás jurisdicciones. El idioma de los procedimientos de arbitraje será el inglés. Cada una de las partes deberá costear sus propios honorarios de abogado, y cada una pagará la mitad de los costos de arbitraje. El Marinero acepta comparecer en los exámenes médicos que relacionen los doctores designados por CCL en especialidades pertinentes a las demandas que el Marinero entable, y de lo contrario las partes acuerdan renunciar a todo derecho a que una parte pueda exigirle información a la otra.

8.      Derecho aplicable. El presente Contrato se regirá por las leyes de la bandera del buque al cual el Marinero esté asignado al momento en que el derecho de iniciar la acción sea ejercitable, y todos los conflictos que surjan por virtud o en conexión con dicho Contrato o con el servicio del Marinero en el buque se resolverán de acuerdo con dichas leyes, sin que importen los principios de conflictos de leyes en virtud de las mismas. Las partes se ciñen a estas leyes que serán aplicables no obstante toda demanda por negligencia, falta de condiciones para navegar, mantenimiento, cura, incumplimiento de proporcionar pronta, apropiada y adecuada atención médica, salarios, lesión personal o daño patrimonial que se pudiera ejercer por virtud de las leyes de cualquiera otra jurisdicción.

9.      Divisibilidad. Si alguna disposición, término o condición del presente Contrato es inválido o no susceptible a ejecución por razón alguna, se considerará estar separado del presente Contrato y las restantes disposiciones, términos y condiciones del mismo no serán afectadas por ello y permanecerán con pleno efecto y vigor.

El suscrito Marinero ha leído, entiende y acepta los términos y condiciones de contratación laboral tal y como aparecen contenidos e incorporados en el presente contrato. El Marinero y Carnival acuerdan entre sí que las partes celebraron libremente el presente Contrato. Convienen además las partes que el texto del Contrato no puede interpretarse en contra del redactor porque representa los términos y condiciones laborales del Marinero que han sido mutuamente acordados y negociados. El Marinero reconoce su deber por separado e independiente de acatar todas las demás reglas, reglamentos y normas verbales o escritas de CCL y/o del operador del buque y/o del mando del barco.

En contraprestación por la oferta de empleo hecha aquí, el Marinero acepta todos y cada uno de los términos y condiciones del presente Contrato, que incluye la naturaleza de "a voluntad de las partes" que caracteriza esta contratación y las disposiciones y limitaciones contenidas en los párrafos 2 y 3 y las disposiciones de arbitraje/selección de derecho aplicable contenidas en los párrafos 7 y 8, aunque sin quedar limitado a éstas. El Marinero reconoce que CCL habría celebrado el presente Contrato de Marinero o de ninguna otra forma había contratado a éste si el Marinero no hubiera aceptado tales términos y condiciones. Por lo tanto, habiendo CCL aceptado la solicitud de empleo y habiéndose convenido los términos y condiciones de empleo entre el Marinero y CCL, los infrascritos celebran el presente Contrato de Marinero hoy día __04__ de __Diciembre__ de __05__.

Firma: _____          Firma: _____
       Firma del Marinero                      Representante por CCL

LINDEL ARVIN NELSON WATSON / 226046             249515
_____          _____
Escribir en letra de molde              Escribir en letra de molde
Nombre/No. de identificación del tripulante   Nombre/No. de identificación del tripulante

Rev. 23/mayo/05 - Arbitraje                              Iniciales _____



## SAILOR EMPLOYMENT AGREEMENT
## CARNIVAL CRUISE LINES

With the Sailor whose name appears below having submitted the job application to Carnival Corporation, whose corporate name is Carnival Cruise Lines ("CCL"), and with CCL having considered said application, this Sailor Employment is entered into between CCL and the Sailor, pursuant to the terms and conditions specified below. Any other covenants, agreements or understandings relative to the terms of employment are hereby overridden and replaced and no amendment to or exemption from this provision shall be considered valid. The Sailor shall not rely on any statement or promise, whether oral or written, which is inconsistent with the Sailor Employment Agreement as to salaries, bonuses and other terms and conditions of the service. Nor will the Sailor rely on any promise, whether oral or written, which is inconsistent with the agreement whereby the Sailor is hired at the discretion of the parties.

1.  Sailor **LINDEL ARVIN NELSON WATSON, CREW # 226046**, agrees to work in the position as **STATEROOM STEWARD** on board of any vessel assigned to him, operated by CCL or by any of its affiliates, irrespective of the kind and location of the vessel assigned. CCL reserves the right to change the position assigned to the Sailor at any time and without prior notice. Once the Sailor has been assigned to a vessel, he shall remain assigned exclusively to that vessel, unless and until he is reassigned to another vessel, at the sole discretion of CCL. CCL reserves the right to change the vessel to which the Sailor has been assigned at any time and without prior notice.

2.  This Sailor Employment Agreement shall become effective when the Sailor starts to work on an assigned vessel in process of navigation The parties agree that the employment relationship between them shall be governed by the terms of this Agreement, starting immediately after the Sailor has registered with the assigned vessel after executing this Agreement and continuing for a period of time not to exceed a maximum service period of **10 months**. This Agreement shall be automatically terminated, without prior notice, immediately after the Sailor disembarks from the vessel at any unforeseen time, for any reason whatsoever including without limitation a non-scheduled leave, disease or injury for more than 24 running hours. This Agreement shall also be terminated without prior notice immediately after the Sailor becomes unfit or unable to serve in the position established at the beginning of a new trip. If the Sailor remains on the assigned vessel after a new trip has started, he will be considered a guest and not a member of the crew any longer. The Sailor shall not recover his status as a member of the crew until he serves again in the assigned position. Besides, this Agreement shall be suspended as long as the assigned vessel is not in process of navigation, including stay at dry docks, the time out of service for repair or maintenance purposes, or if the vessel has not yet been set into operation. Notwithstanding any other provision contained in the Sailor Employment Agreement, this can be terminated immediately at the discretion of CCL or the Sailor, by giving the other party oral or written notice of termination or resignation.

3.A.  The right of the Sailor to receive a salary is subject to the condition that he actually sets his signature and registers as a member of the crew of the assigned vessel in the position to which he is appointed while the vessel is in process of navigation.

3.B.  The Sailor shall be paid a salary of **$1.6071 Dollars** per work day, including overtime. This daily rate is equivalent to a monthly salary of **$48.7500 Dollars**. A working week consists of 42 basic hours and 28 overtime hours, regardless of the fact whether overtime is worked or not, thus resulting in a working week composed of a total of 70 hours. The Sailor shall also receive vacation pay at a rate of one day for every eleven days worked.

3.C.  This paragraph 3 (C) shall not apply to any Sailor who can receive gratuities or bonuses from passengers or other Sailors. Nor will this paragraph 3 (C) apply to any Sailor working in management or in...

Rev. May 23, 2005 - Arbitration     [seal in English] EXHIBIT A     Initials [illegible]





...the capacity as Head of Department. Subject to these exceptions, extra overtime shall consist of hours worked in excess of 70 hours per week according to the records kept by CCL. The Sailor shall be paid **N/A** per extra overtime hour worked, but it is hereby understood and agreed that the Sailor shall not be entitled or expected to work or to be instructed to work extra overtime hours assigned at the discretion of CCL "as necessary". In the event that the Sailor believes that he has worked more hours that those specified in the hour records of the Sailor or CCL, or in the event that any accrued salary is due to him, the Sailor shall notify his supervisor or his head of department about it in writing before the end of the trip during which such extra overtime was worked. Additionally, the Sailor must follow the salary controversy settlement procedures specified in the Document of Acknowledgement and Checking of the Salary Payment Form, which the Sailor must fill in before the end of the trip in question.

3.D. CCL does not promise, guarantee or undertake, and the Sailor agrees that he does not expect or foresee CCL, to pay any gratuity or bonus by way of compensation under any circumstance. In the event that a Sailor who can receive gratuities as a result of the position that he holds works under this Agreement for a period during which the vessel is out of regular service for any reason, as in dry docks, during an ocean route or taking part in opening ceremonies, or in the event that the Sailor is working other than on board of the vessel, he shall be paid a daily rate of **$35.00 Dollars**. In the event that he is paid the salary specified in this paragraph, all the provisions of paragraph 3.B. above, except the ones contained in the first sentence, shall continue to be fully valid and effective.

3.E. In the event that the Sailor becomes sick, injured, unfit or unable to work during a trip, his right to receive non-accrued salaries shall only continue up to the end of the trip where the Sailor fulfills his service. In the event that the sailor is out of service due to sickness or injury, CCL reserves the right to offer him medical treatment on board of the vessel or on shore, whether at the original port of the vessel, at a regular stopover port, or in the country where the Sailor resides, at the sole discretion of CCL, notwithstanding the automatic termination of this Agreement under those circumstances.

3.F. In the event that the Sailor returns to work after this Agreement has been automatically terminated pursuant to paragraph 2, then the Sailor's return to active work will mark the beginning of a new separate Sailor Employment Agreement pursuant to the same terms and conditions of this Agreement, which shall remain valid and effective until a new Sailor Employment Agreement is executed.

3.G. Should a scheduled job assigned to the Sailor coincide with a floating or dry dock period, the Sailor may be put out of service for the assigned vessel prior to said floating or dry dock period, and in this case he shall not be hired or employed by CCL during such periods. Should the Sailor remain on the vessel during those periods, he shall be considered a business guest until the vessel sails again.

4. The Sailor acknowledges that, in his capacity as such, he is at all times expected to obey and fulfill the rules and regulations of the assigned vessel, those in the Team Carnival Handbook, and any other rules, regulations and oral and written instructions of CCL and/or the operator and/or commander of the assigned vessel. Any infringement of such rules, policies, procedures and/or instructions may lead to a disciplinary action, including up to the automatic termination of the employment agreement. This Agreement does not in any way reduce or modify the duties to abide by such rules, policies, procedures and/or instructions that the Sailor holds in his own capacity as such.

5. This Sailor Employment Agreement represents the entire and sole employment agreement between the parties. There are no prior or current agreements, statements or understandings, whether oral or written, which bind the parties, except those expressly contained in this Sailor Employment Agreement. No amendment to or change of this Sailor Employment Agreement shall be valid and binding upon the parties unless stated in writing and signed by the party or parties interested in being thereby bound.

6. Legal-Commercial Relationship. The Sailor and the Cruise Line acknowledge and accept that the Sailor Employment Agreement with CCL constitutes a legal-commercial relationship between the parties.

Rev. May 23, 2005 - Arbitration                                                                                                      Initials [illegible]

7. Arbitration. Any controversies arising out of or in connection with this Agreement, including any...



...issues about its existence, validity or termination, or the Sailor's service on the vessel, shall be referred to arbitration and finally settled in that way, pursuant to the Arbitration Rules of the International Chamber of Commerce, whose rules are deemed to be incorporated herein by way of reference. There will be one arbitrator. The arbitration venue shall be London, England, Monaco, the city of Panama in Panama, or Manila in the Philippines, the one that is closest to the country of residence of the Sailor. The Sailor and the Cruise Line must resort to arbitration within the established jurisdiction, waiving any other jurisdiction. Arbitration procedures shall be conducted in English language. Each party must pay for its own attorney fees and for one half of the arbitration expenses. The Sailor agrees to submit to medical examinations prescribed by physicians appointed by CCL in the specialties in accordance with the claims that the Sailor files; otherwise, the parties agree to waive any right of a party to demand information from the other.

8. Applicable law. This Agreement shall be governed by the laws of the country of the flag of the vessel to which the Sailor is assigned at the time when he can exercise the right to file a claim and any controversies arising out of or in connection with said Agreement or related to the service of the Sailor on board of the vessel shall be settled pursuant to such laws, without regard to any conflict of law arising therefrom. The parties submit to these laws, which shall apply notwithstanding any claim for negligence, lack of seaworthiness conditions, maintenance, curing, failure to provide prompt, proper and adequate medical care, salaries, personal injury or property damage which might be exercised pursuant to the laws of any other jurisdiction.

9. Severalty. Should any provision, term or condition of this Agreement be invalid or unenforceable for any reason, it shall be deemed severed from this Agreement and the remaining provisions, terms and conditions shall not be affected thereby and shall remain fully valid and effective.

The undersigned Sailor has read, understood and accepted the terms and conditions of employment as contained and incorporated in this agreement. The Sailor and Carnival agree that the parties have entered into this Agreement freely. The parties also agree that the wording of the Agreement cannot be interpreted against the person who drafted it because it represents the employment terms and conditions of the Sailor, which have been mutually agreed and negotiated. The Sailor acknowledges his separate and independent duty to abide by all the other rules, regulations and oral or written instructions of CCL and/or the vessel operator and/or the vessel commander.

In consideration of the employment offer hereunder, the Sailor accepts any and all of the terms and conditions of this Agreement, including the "at the will of the parties" nature of this hiring, the provisions and limitations contained in paragraphs 2 and 3 and the arbitration/applicable law provisions contained in paragraphs 7 and 8, though not limited thereto. The Sailor acknowledges that CCL would have executed this Sailor Employment Agreement or would not have otherwise hired him if the Sailor had not accepted such terms and conditions. Therefore, with CCL having accepted the job application and with the Sailor and CCL having agreed on the terms and conditions of employment, the undersigned parties enter into this Sailor Employment Agreement today, [handwritten] December 04th, 2005.

Signature: [signature]      Signature: [signature]
    Sailor's Signature      CCL Representative

LINDEL ARVIN NELSON WATSON / 226046      [handwritten] 2495[unintelligible]5
Please write in print letters      Please write in print letters
Name/Identification Number of Crew Member      Name/Identification Number of Crew Member

Rev. May 23, 2005 - Arbitration      Initials [illegible]



STATE OF FLORIDA        )
                                     ) SS
COUNTY OF MIAMI-DADE )

BEFORE ME, A NOTARY PUBLIC IN AND FOR THE STATE OF FLORIDA AT LARGE, PERSONALLY APPEARS Ida Alvarez, President of Action Translation Services, Inc., PERSONALLY KNOWN TO ME, WHO, AFTER BEING DULY SWORN, DEPOSES AND SAYS THAT SHE HAS PERFORMED THIS TRANSLATION OF SAILOR EMPLOYMENT AGREEMENT – LINDEL ARVIN NELSON WATSON

FROM SPANISH INTO ENGLISH, AND THAT SHE HAS DONE THIS TRANSLATION TO THE BEST OF HER ABILITY. THE SOURCE DOCUMENT CONSISTING OF 03 PAGE(S), AND THE TRANSLATION CONSISTING OF 03 PAGE(S); THIS CERTIFICATION BEING ATTACHED THERETO. THIS CERTIFICATION ATTACHED TO THE PRINTED DOCUMENT, DOES NOT INCLUDE THE CERTIFICATION OF ANY ELECTRONIC FILE.

_____
IDA ALVAREZ

SWORN TO AND SUBSCRIBED THIS 28 DAY OF APRIL, A.D., 2010.

_____
NOTARY PUBLIC, STATE OF FLORIDA
AT LARGE

MY COMMISSION EXPIRES:

NOTARY PUBLIC-STATE OF FLORIDA
Santiago M. Gabino
Commission # DD776453
Expires: APR. 07, 2012
BONDED THRU ATLANTIC BONDING CO., INC.

814 Ponce de Leon Blvd., #219, Coral Gables, FL 33134 www.ActionTranslations.com Phone: 305-460-8977 Fax: 305-460-2519 E-mail: info@ActionTranslations.com